IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 3:23-CR-102 |
| v. | ) | |
| | ) | JUDGES VARLAN/McCOOK |
| MATTHEW ESTES | ) | |

**UNITED STATES' RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The Court should deny defendant Matthew Estes's motion to dismiss the indictment, because he fails to establish that the delay between his offenses and his indictment violated his right to due process, or that the delay violated Federal Rule of Criminal Procedure 48.

**FACTUAL AND PROCEDURAL HISTORY**

On Christmas Eve in 2015, defendant videoed himself anally raping a 16-month-old baby boy. [Exhibit 1, Exhibit 4.] That same day, he also videoed himself performing oral sex on an eight-year-old boy. [Exhibit 1, Exhibit 4.] In total, defendant created six videos and eleven images of himself sexually abusing these two children. [Exhibit 2.] Then he distributed the videos and images online. [*Id.*]

On February 9 and 10, 2016, defendant again videoed himself anally raping the baby boy. [Exhibit 4, pg. 2-4.] The rape was so violent that it caused the baby boy to bleed from his rectum. [*Id.*, pg. 4.] Again, the defendant distributed the videos online. [*Id.*, pg. 2.] At the time, defendant was 17 years old—about three-and-a-half months shy of his 18th birthday. [*See* Exhibit 1, pg. 1.]

*May 2016*. The National Center for Missing and Exploited Children (NCMEC) sent a Priority One Cybertip to law enforcement in Knoxville, Tennessee, warning of an imminent threat to children and containing information about the sexual-abuse videos and images that

defendant made in December 2015. [*Id.*] The tip did not, however, contain any information about the child-sexual-abuse videos that defendant made in February 2016. [*Id.*]

The same day that law enforcement received the NCMEC tip, they spoke to defendant's father. [*Id.*] He identified the defendant as the person in redacted versions of the sexual-abuse videos and images from December 2015. [*Id.*] Defendant's father also confirmed that defendant and his mother were vacationing in Oregon and that defendant had an iPhone and iPad with him. [*Id.*]. By the time law enforcement got a warrant to search defendant's iPhone and iPad, both devices had undergone a factory reset. That reset deleted from the devices any videos, images, and digital forensics that they contained.

The United States Attorney's Office declined to prosecute defendant for the child-sexual-abuse videos and images that he made in December 2015. [Exhibit 2, pg. 3.] That decision was based on Department of Justice policy and the Juvenile Delinquency Act (JDA), which generally favors allowing state authorities to address offenses committed by juveniles. *See generally* 18 U.S.C. § 5032. Department policy and the JDA expressly allow federal proceedings against juveniles, however, when a state refuses to exercise its jurisdiction over their offenses. *Id.*

*February 2017*. The Knox County District Attorney's Office charged defendant for the sexual abuse he had committed in December 2015. [Exhibit 3, Exhibit 4.] Defendant was prosecuted as an adult, having waived the right to challenge whether he should be tried as a juvenile. [Doc. 40, pg. 2.] He pled guilty to four felonies: two counts of Rape of a Child in violation of Tennessee Code Annotated (TCA) § 39-13-522, and two counts of Especially Aggravated Sexual Exploitation of a Minor in violation of TCA § 39-17-1005. [Exhibit 3.] The defendant was sentenced to thirty (30) years in state prison. [*Id.*]

*October 2017*. Royal Canadian Mounted Police contacted Knoxville Police to advise that they had found another video of defendant raping the baby boy. [Exhibit 4, pgs. 2-3] On a dark-web website called "HurtMeh," the new video was titled "Toddler being pummeled without any regard to his well-being." [*Id*.] The video had not previously been identified as part of the SUPERHERO BOYS series, which is the title NCMEC assigned to defendant's victims based on the sexual-abuse videos and images he made in December 2015. [*Id.*] The file name for the new video was "Video Feb 09, 8 36 57 PM." [*Id.*, pg. 2.]

*May 2018*. An investigator with the Santa Barbara County District Attorney's Office contacted Knoxville Police with information about yet another video of the defendant raping the baby boy. [Exhibit 4, pg. 4.] This video had not previously been identified as part of the SUPERHERO BOYS series either. [*Id.*] The new video contained EXIF data which indicated that the video had been filmed at the defendant's home, had been created by an Apple iPad, and had been created on February 10, 2016. [*Id.*, pg. 5.] About a week later, the Knox County District Attorney's Office declined to prosecute the defendant for the newly discovered rape videos. [*See* Doc. 4, pg. 6.]

*September 2018*. On September 5, the U.S. Attorney's Office accepted defendant's case for prosecution, based on the new videos that showed him raping the baby boy in February 2016. Three events, however, delayed the defendant's federal prosecution. First, the U.S. Attorney's Office decided to prosecute other child exploitation cases that took priority over defendant's case. Specifically, federal prosecutors focused their resources on defendants who posed the greatest immediate threat to childrens' safety. In contrast to those defendants, defendant here was in state prison and therefore posed no immediate threat to any children. Second, COVID-19 resulted in an increase in child-exploitation cases coupled with significant delays to criminal

proceedings in the federal courts. Third, in July 2022, the Assistant U.S. Attorney assigned to defendant's case left the office for another position. The undersigned Assistant U.S. Attorney—who already had a full case load of child-exploitation cases—took over all of the outgoing prosecutor's cases.

Meanwhile, law enforcement continued to attempt to recover evidence from defendant's iPhone and iPad. The most recent attempt occurred in February 2020, when Knoxville Police conducted a forensic examination of those devices using a newer and more powerful software suite for iOS devices. Like the previous attempts, that one was unsuccessful.

*October 2023*. A federal grand jury indicted the defendant for four offenses: two counts of producing child pornography in violation of 18 U.S.C. § 2251(a), and two counts of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2). [Doc. 1.] Months later, Defendant filed a motion to dismiss, challenging the delay between his crimes and his indictment. [Doc. 40.]

## ARGUMENT

The defendant fails to establish that either the Constitution or Federal Rule of Criminal Procedure 48 were violated by the delay in his indictment.

**I.  The pre-indictment delay did not violate defendant's constitutional right to due process.**

To establish that a preindictment violated the Constitution's due process clause, defendant bears the burden to show two elements: (1) that "the delay was intentionally caused by the government in order to gain a tactical advantage," and (2) that the delay caused "prejudice to his right to a fair trial." *United States v. Lively*, 852 F.3d 549, 566 (6th Cir. 2017). "Both elements are difficult to establish." *Id.* In fact, the burden to prove them is "nearly insurmountable."

*United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997). Here, defendant proves neither element.

A. *The United States did not intentionally delay indicting defendant to gain a tactical advantage.*

"[A] defendant's Fifth Amendment due process rights are generally not implicated where the government offers a valid reason for the delay." *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992). Here, at least three valid reasons explain the delay in defendant's indictment.

First, the United States decided to prosecute other child exploitation cases that took priority over defendant's case. Every day, prosecutors perform triage to determine which child-exploitation cases can be prosecuted with the limited amount of time and resources available. The highest priority cases involve defendants who are actively harming children. Here, the defendant was serving a thirty-year sentence and was therefore not an immediate threat to children in the community. As a result, the United States decided to prosecute other more dangerous defendants before prosecuting the defendant here.

Second, COVID-19 resulted in an increase in child-exploitation cases coupled with significant delays to criminal proceedings in the federal courts. In recent years—and especially since the COVID-19 pandemic—crimes against children have surged since the internet has proven to be a safe haven for child predators to meet in anonymity and to obtain child-sexual-abuse material. The internet gives child predators a place to meet, learn, discuss, and strategize how to abuse children. For instance, hundreds of child predators around the world have seen the defendant's horrific crimes. As of 2023, NCMEC has been contacted over 300 times from all over the world to report videos and images of the defendant raping his victims. At the same time that child-exploitation cases increased, COVID-19 caused delays in many federal court proceedings.

Third, in 2022, the undersigned Assistant U.S. Attorney—who already had a full case load of child-exploitation cases—took over several additional child-exploitation cases, including defendant's case. The undersigned prosecutor spent substantial time prosecuting one of those additional cases, the pro se *Glatz* case that was scheduled for an upcoming trial. Based on the *Glatz* case and other cases, the undersigned had a major backlog of cases and was unable to turn to defendant's case until 2023. In addition, the United States hoped that investigators would be able to access the defendant's iPhone and iPad, both of which had been factory reset. The inability for law enforcement to get past the factory reset and waiting for new software to get into defendant's electronics was a factor in when to indict the defendant.

Like the outgoing Assistant U.S. Attorney, the undersigned agreed that defendant's 2016 crimes warranted federal prosecution based on several factors. The state declined to prosecute the defendant for those crimes. The defendant, although 17 at the time of his crimes, was a repeat offender. He had multiple victims and had committed multiple rapes. In only two years' time, defendant's child-sexual-abuse videos had spread across the United States and into other countries. Across the internet, sexual predators tout the defendant as a folk hero because of the extreme violence defendant forced on his young victim. [Exhibit 4.] Most importantly, the defendant's violent rapes of a helpless baby boy were uniquely horrific. Even experienced law enforcement had never seen anything like the defendant's offenses.

Defendant cannot meet his burden by simply making "general allegations" about the United States' intent. *United States v. Roberts*, 548 F.2d 665, 668 (6th Cir. 1977). Rather, the defendant must "demonstrate that the Government had no valid reason for the delay." *United States v. Schaffer*, 586, F.3d 414, 424-26 (6th Circuit 2009). To make that showing, defendant needs to provide "evidence." *United States v. Lawson*, 780 F.2d 535, 541 (6th Cir. 1985).

"[S]impl[e] negligen[ce]" is insufficient to show an intentional delay. *Lively*, 852 F.3d at 567. Defendant, however, offers only general allegation of intent. He does not dispute the valid reasons listed above.

The delay did not provide the United States any "tactical advantage" under the Juvenile Delinquency Act. *Brown*, 959 F.2d at 66. In this context, a "tactical advantage" means a change that "in some sense ease[d] [the United States'] burden of pro[of]" at trial. *Id.* To prosecute defendant as an adult will not ease the United States' burden of proof. At defendant's trial, the United States will be required to prove beyond a reasonable doubt every element of defendant's offenses.

In the end, the U.S. Attorney's Office exercised its discretion to prosecute other defendants ahead of the defendant here. That discretion relied on a judgment call that those defendants posed more danger to children than the defendant here—who is in prison and therefore presented no immediate threat. And "[t]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *United States v. Talbot*, 825 F.2d 991, 998 (6th Cir. 1987).

B. *Defendant fails to show that the delay prejudiced his right to fair trial.*

To establish prejudice "to his right to a fair trial," defendant must show that the delay "caused him actual prejudice in presenting his defense." *Schaffer*, 586 F.3d at 424-25. "[G]eneral allegations" and vague assertions about witnesses and documents are not enough to show "actual prejudice." *Id.* at 424. Instead, to meet his burden, defendant needs to identify specific "witnesses [who] were [made] unavailable" by the delay or "specific evidence [that] had been lost or destroyed" as a result of the delay. *Id.* What is more, the defendant also needs to explain how the witnesses or documents "would have aided the defense." *United States v. Duncan*, 763

F.2d 220, 222 (6th Cir. 1985). A witness's "loss of memory is an insufficient reason to establish prejudice." *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003).

Defendant does not identify any specific witnesses or documents made unavailable by the delay in his indictment. For witnesses, he mentions his parents, saying that their memories have faded and they "may" not be located. [Doc. 40, pgs. 4-5]. But they still live in the area, and he does not establish that the delay made them unavailable to testify. [*Id.*] Likewise, defendant refers to "employers" and "others who may have possessed information about [his] whereabouts"—but he does not specify which employers or which other people, nor does he establish that they are now unavailable to testify on his behalf as a result of the delay. [*Id.*] Although defendant asserts that "[d]ocuments relating to [his] location at the time of the offense … have gone missing or have been deleted" [Doc. 40, pg. 4], he never explains what documents he's referring to.

Defendant's arguments suffer from another insurmountable problem. He does not explain how *any* witnesses or *any* documents would have aided his defense. The proof of the defendant's 2016 crimes turns on the videos themselves. In both videos, defendant's face is clearly visible as he violently rapes his victim. [Exhibit 4.] Defendant mentions an alibi defense [Doc. 40, pg. 4], but that is wishful thinking. One of the videos contains EXIF data confirming the exact date and time—February 10, 2016, at about 1:31am—that he created it. [Exhibit 4, pg. 5.] The EXIF data also shows the exact location—his home—where the defendant was located at the time he made the video. [Exhibit 4, pg. 5]. Also, both videos share relevant similarities to the 2015 videos to which defendant has already pled guilty: same location, same toddler victim, and same defendant. Defendant offers nothing to explain how his parents, unspecified employers, unspecified other witnesses, or unspecified documents would refute any of that evidence.

In addition, the defendant fails to establish prejudice under the Juvenile Delinquency Act. As a threshold matter, courts have uniformly held that the JDA is inapplicable in cases where the defendant committed an offense before the age of 18 but was not indicted until after he turned 21. *See, e.g., United States v. Jiminez,* 256 F.3d 330, 346 n.19 (5th Cir. 2001) (finding that the JDA does not apply to persons indicted after the age of 21, and noting that "circuits that have addressed this issue agree that the JDA is inapplicable under these circumstances"); *United States v. Delatorre*, 157 F.3d 1205, 1210 n.2 (10th Cir. 1998) (finding that "[c]ourts have uniformly held that under 18 U.S.C. § 5031, a defendant alleged to have committed a crime before his eighteenth birthday but indicted after reaching the age of twenty-one may not invoke the protections of the JDA"); *United States v. Araiza-Valdez*, 713 F.2d 430, 433 (9th Cir. 1980) (noting that "an information alleging acts of delinquency occurring prior to the accused's 18th birthday but filed after his or her 21st year is too late to establish JDA jurisdiction"); *United States v. Running*, 431 Fed. App'x. 520 (8th Cir. 2001) (affirming that the JDA does not cover defendant who committed child-exploitation offense when he was age 14 and who was indicted for the crime at age 23). In expressly declining to extend the protections of the JDA past the age of 21, courts have noted that to do so would render "virtually meaningless" the limiting language adopted by Congress in section 5031. *United States v. Hoo*, 825 F.2d 667, 670 (2nd Cir., 1987) (citing cases from the Ninth and Eleventh Circuits); *United States v. Blake*, 571 F.3d 331, 344 (4th Cir. 2009); *United States v. Wright*, 540 F.3d 833, 838-39 (8th Cir. 2008).

Here, defendant's 2016 crimes were committed when he was three-and-a-half months shy of his 18th birthday. The United States learned of those crimes in September 2018, when the federal cases were opened against the defendant. Defendant was then 20 years old, and he turned 21 eight months later in May 2019. To show prejudice, defendant therefore needs to establish

that the eight-month delay was unreasonable. Under similar circumstances, courts have repeatedly found that the delay caused no prejudice. *E.g.*, *Hoo*, 825 F.2d at 670-71. "The due process clause does not require that decisions to prosecute be subjected to pre-indictment judicial inquiry simply because the timing of the decision affects the availability of juvenile procedures." *Id.* at 671.

The United States acknowledges that defendant faces higher penalties in a criminal prosecution than he would in a juvenile adjudication. But potential penalties are simply not the measure of prejudice for preindictment delay—instead, defendant must show that the delay prejudiced his right to a "fair trial." *Lively*, 852 F.3d at 566. Regardless of whether defendant is tried as a juvenile or an adult, the defendant's constitutional right to a fair trial do not change. In a criminal prosecution as an adult, defendant will receive a fair trial and the United States will be required to prove every element beyond a reasonable doubt.

Other reasons also weigh against defendant's argument. For one thing, "the acceptability of a pre-indictment delay is generally measured by the applicable statute of limitations." *Schaffer*, 586 F.3d at 425. And here, Congress expressly determined that the child-exploitation offenses shall have no statute of limitations. 18 U.S.C. § 3299. To accept Defendant's argument would be to create a bright-line five-year time limit for prosecutors to bring charges against defendants who commit child-exploitation offenses. But Congress has expressly determined that child-exploitation charges may properly be brought years—even decades—after the crimes were committed. 18 U.S.C. § 3299. For another, the Sixth Circuit has previously affirmed denial of due-process claims based on multi-year delays. *Lively*, 852 F.3d at 554; *United States v. Brown*, 498 F.3d 523, 527 (6th Cir. 2007); *United States v. DeClue*, 899 F.2d 1465, 1469 (6th Cir. 1990).

The Court should therefore deny defendant's due-process claim.

**II. The pre-indictment delay did not violate Federal Rule of Criminal Procedure 48.**

Federal Rule of Criminal Procedure 48(b) allows courts to dismiss an indictment based on "unnecessary delay" in "presenting a charge to a grand jury." But Rule 48(b) "is clearly limited to post-arrest situations." *United States v. Marion*, 404 U.S. 307, 319 (1971). Thus the Rule applies only to a delay in the indictment that occurs *after* a defendant has been arrested. *United States v. Giacalone*, 477 F.2d 1273, 1275 (6th Cir. 1973); *United States v. Ciammitti*, 720 F.2d 927, 930 (6th Cir. 1983); *United States v. Green*, 917 F.2d 25, at *8 (6th Cir. 1990) (table). Rule 48(b) simply does not apply here, where defendant challenges the delay that occurred between his offenses and his indictment.

Although defendant cites the decision in *United States v. Henry*, 815 F. Supp 325 (D. Arizona, 1993) [Doc. 40, pg. 6], *Henry* is neither binding nor persuasive. In fact, *Henry* directly contradicts binding precedent from the Sixth Circuit, which has repeatedly held that Rule 48(b)(1) applies only to delays that occur after a defendant has been arrested. *E.g.*, *Giacalone*, 477 F.2d at 1275. In any event, the defendant here—unlike the defendant in *Henry*—has failed to establish any prejudice from the delay in his indictment. There, the defendant "presented proof that evidence … ha[d] been irretrievably lost, physical evidence … was not preserved, and memories ha[d] blurred" due to the preindictment delay. *Henry*, 815 F. Supp. at 328. Here, however, the defendant has presented no proof of lost evidence, no proof of unpreserved physical evidence, and no proof of specific witnesses whose memories have blurred.

## CONCLUSION

For the reasons stated above, the Court should deny defendant's motion to dismiss the indictment.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

*s/Jennifer Kolman*
Jennifer Kolman
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
jennifer.kolman@usdoj.gov
GA Bar #427930