IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

| | |
|---|---|
| UNITED STATES | |
| v. | No. 3:23-CR-102 |
| | JUDGE VARLAN |
| MATTHEW ESTES | |

**SENTENCING MEMORANDUM ON BEHALF OF MATTHEW ESTES AND MOTION FOR DOWNWARD DEPARTURE OR VARIANCE**

**Introduction**

On August 23, 2024, Matthew Estes entered a plea of guilty to two counts of a four-count Indictment charging him with Exploitation of a Child in violation of Title 18 U.S.C. § 2251(a). Mr. Estes now stands before this Court for sentencing, and for the reasons stated herein, Mr. Estes moves this Court to grant him a downward departure or variance from the applicable advisory sentencing guideline range.

Based upon this motion combined with an analysis of the factors outlined in 18 U.S.C. §3553, it is respectfully submitted that this Honorable Court should find that a downward departure or variance from the applicable sentencing guideline range to a sentence of thirty years on each count to run concurrently to each other and to Mr. Estes' unexpired State sentence is appropriate.

**Factors to be Considered**

As the Court is aware, 18 U.S.C. § 3553 instructs the Court to impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in paragraph (a)(2)considering the following four factors:

1

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The factors the Court is directed to evaluate in making this determination include, among others, the nature and circumstances of the offense and the history and characteristics of the defendant. Mr. Estes submits this sentencing memorandum and letters of support[1] from his adoptive mother, professors from the college he attended, a former volunteer of the Kairos program, and the Executive Director of the Knoxville-Knox County Community Action Committee (CAC) for the Court's consideration in fashioning an appropriate sentence for Mr. Estes.

**Guidelines in this Case**

The Presentence Report calculates an adjusted total offense level of 43, pursuant to Chapter 5, Part A (comment n.2), and includes a three-level reduction for acceptance of responsibility. (PSR, Doc. 58, Page ID#199 at Page ID#211.). The PSR calculates a guideline term of imprisonment of 720 months pursuant to USSG § 5G1.2(d). (*Id*. at Page ID#217).

---

[1] Letters of Support are attached hereto as Collective Exhibit 1 and are organized therein alphabetically by last name. Letters have also been redacted in accordance with Federal Rule of Criminal Procedure 49.1. Unredacted copies will be made available to the Court upon request.

## History and Characteristics of the Defendant

**Family and Personal History, Education**

Mr. Estes was born on May 23, 1998, in Hendersonville, Tennessee. He is the second of two sons and was born into a home where both of his birth parents abused illegal drugs. Although there is limited information about his father, based upon Mr. Estes's foster records, it can be determined that his father had a history of violence and spent time in prison. His mother, in addition to being a drug addict, failed to obtain prenatal care when pregnant with Mr. Estes. She also suffered from a number of serious psychological disorders for which she was hospitalized. The relationship between Mr. Estes's biological parents was categorized by domestic abuse and their relationship with their children, one of neglect. As described by Karen Estes, adoptive mother of Mr. Estes, "Matthew was born and survived his first three years of life in the worst of conditions." Collective Exhibit 1, Letter from Karen Estes.

The neglect was so severe that when the Department of Children's Services (DCS) intervened and removed Mr. Estes and his older brother from the home when Mr. Estes was about two years old, he was anemic and malnourished. He had not received medical care. He had been physically abused by his father and DCS suspected sexually abused as well. His primary caregiver had been his one-year older brother, who tried to ensure that Mr. Estes had a diaper change and a bottle – a three-year-old caring for a two-year-old in the complete absence of adequate adult caregivers. Ms. Estes writes of this difficult time: "Matthew was placed in custody of the Tennessee Department of Children's Services at the age of three. During this time, Matthew did not receive adequate services from the Tennessee Department of Children's Services as this department was in a state of upheaval during those years."

3

Once removed by DCS, Mr. Estes and his older brother were placed in a foster home for the next four years where there were two older children, a brother and a sister who had previously been adopted by Mr. Estes's new foster parents. While there, Mr. Estes was repeatedly raped by his foster brother and subjected to sexual contact by his foster sister.

Not surprisingly, as a child Mr. Estes exhibited significant behavioral problems. By the age of four, he was diagnosed with Post-Traumatic Stress Disorder, ADHD, and Reactive Attachment Disorder. He was medicated for these conditions.

Mr. Estes and his older brother were eventually adopted by Jason and Karen Estes, who had no other children. At the time, both Jason and Karen were employed by the City of Knoxville in director-level positions within the CAC. Mr. Estes was approximately six years old at the time of his adoption. Barbara Kelly, the Executive Director of the Knoxville-Knox County CAC, recalls meeting Mr. Estes around this time, stating, "I first met Matthew as a scared, over-medicated six-year-old." Collective Exhibit 1, Letter from Barbara Kelly, p. 1.

While the Esteses were well-intentioned, hardworking, new parents, following adoption, it was Mr. Estes' older brother who received the lion's share of their attention because he suffered from Autism and more severe psychiatric problems. His brother's behavioral disorders practically screamed for their parents' attention while Mr. Estes' issues slipped silently into the background as the outwardly less troubled of the two.

Mr. Estes stopped receiving medications except for his ADHD medication and did not receive regular behavioral therapy until a year post-adoption. On occasions when his parents did address behavioral concerns with his medical providers, his parents were primarily focused on Mr. Estes not conforming his behavior at school or disobeying at home. The only mental health treatment other than medication management that Matthew had received since shortly after he was

4

adopted was when he voluntarily committed himself to Peninsula Hospital in late May of 2016 as a result of suicidal thoughts. He was referred to outpatient treatment after a few days but was shortly thereafter arrested and incarcerated in the related State case before a treatment program was implemented. Since his incarceration, he has not been referred to any mental health treatment due to opportunities being severely limited.

Mr. Estes' parents had their hands full with his older brother, and because they failed to recognize the subtler indicators of trauma that Mr. Estes displayed, they did not obtain treatment for him. Instead, seeing him as the more "normal" of the two children, they were very strict with him, and placed high expectations on him. Mr. Estes was bullied in school and felt invisible at home. Dr. Kathryn R. Smith, a board-certified forensic psychologist with extensive experience, completed an evaluation of Mr. Estes, attached hereto as **Sealed Exhibit 2**. Dr. Smith elaborates as to the lack of treatment and its impact on Mr. Estes, stating:

> Due to the circumstances of his adoption, in which his older (more outwardly disturbed) brother's treatment needs were prioritized, Mr. Estes' needs for help with his trauma history were neglected/overlooked. Quite simply, he did not get the help he needed during his developmental years.

Sealed Exhibit 2, p. 7.

Mr. Estes managed to get by in school and graduated high school at the age of seventeen. Despite his traumatic past and his current circumstances, Mr. Estes has aspirations for his future. While incarcerated, he has received multiple associates degrees through the Tennessee Transfer Pathway with Emphasis in each of the following fields of study: Business, Accounting, Marketing, Economics, Finance, and Management. He also received additional certifications from KIROS where he served as a peer volunteer and completed Masonry and Carpentry vocational programs.

5

Ms. Kelly describes Mr. Estes' educational achievements[2] and their impact, stating:

> On May 11, 2023, Matthew was one of thirteen students receiving the Associate of Science Degree, He graduated Summa Cum Laude with a 4.0 GPA. Matthew was elected to Phi Theta Kappa which is the official honor society of community colleges. It is comparable to Phi Beta Kappa for four-year institutions. This was a day of pride and celebration but Matthew was humbled and appreciative of the recognition he received. Especially the pride of Jason, Karen, and his grandmother.

Collective Exhibit 1, Letter from Barbara Kelly, p. 3.

In Dr. Smith's evaluation, she notes how Mr. Estes has optimized his time spent incarcerated:

> Based on available data, he has made very good use of his time, working to improve himself through academic and vocational pursuits. He has completed training in Masonry and Carpentry and obtained an associate's degree. He worked as a tutor for inmates seeking a high school equivalency degree and for other inmates who were in college courses, and he has worked as an observer for inmates on suicide watch. He has participated in religious programs. He has engaged in self-improvement through therapeutic journalling.

Sealed Exhibit 2, p. 6.

At the time the present offenses were committed, Mr. Estes was seventeen years old. He was a juvenile and certainly not an emotionally mature well-adjusted adult. He did not have close friends or a support system. He had no meaningful romantic relationships. He struggled to define his sexual identity in the context of his parents' strict religious and moral objections to homosexuality. It is against this background, the history of untreated abuse and underdevelopment of social and sexual norms, that Mr. Estes came to be influenced to commit the acts to which he has pled guilty to.

It is for those acts that he has been continuously incarcerated since July 13, 2016, when he entered custody on related state offenses for which he is serving a thirty-year sentence. Ms. Estes

---

[2] *See also* (Collective Exhibit 1, Letter from Mallisa Trent, Dean of Mathematics and Director of Learning Support).

emphasized the fact that Mr. Estes has suffered enough punishment, stating "Matthew was sentenced over eight years ago, as an adult, for a crime that he committed as a minor. Matthew accepted his sentence and should not receive additional sentencing for the same crime again."

Despite the serious nature of his crimes, Mr. Estes has support from his family and community. Those in his current support system recognize Mr. Estes' ability to make the best of his limited circumstances in prison, while simultaneously battling with his own shame and guilt over his actions. Mr. Michael Scott wrote about the transformation he has witnessed in Mathew's journey while in prison:

> Matthew endured unimaginable abuse from infancy through childhood – horrors that could have destroyed him. Many who suffer such trauma never escape its grip. Instead of succumbing to bitterness or violence, Matthew fought to rise above it. He turned to faith, to education, and service. He became a man of discipline, not anger, of patience, not resentment. That kind of transformation is rare, yet Matthew has walked that path.

Collective Exhibit 1, Letter from Michael Scott, p. 2.

Ms. Estes, his adoptive mother, wrote:

> Matthew advocated for educational opportunities for inmates, and once they became available, Matthew participated in these opportunities where he excelled. Matthew received several degrees, he was the valedictorian of his class, he was admired and respected by his professors, and he tutored inmates for them to also receive degrees.

Collective Exhibit 1, Letter from Karen Estes.

Ms. Kelly also recognizes Mr. Estes' resilience and ability to accept responsibility, stating:

> Throughout my time with Matthew, he has never tried to excuse himself or blame anyone for his offence or his situation. [] The variety of people and the intensity of their opinions about Matthew, the man he is today, is impressive and speaks highly of his character. I have seen him move from a frightened teen, to a man who lives with remorse, but who strives to make a positive contribution to whatever situation he finds himself in. He wants his life to mean something.

Collective Exhibit 1, Letter from Barbara Kelly, p. 4.

7

Dr. Smith also made observations about Mr. Estes' perseverance in the face of a lengthy prison sentence when he was just eighteen years old, and his growth since then, stating:

> During his time in state prison, Mr. Estes demonstrated his ability to learn, improve himself, acquire skills, adhere to rules/requirements, and display self-control, despite the knowledge that he faced a 30 year sentence to serve at 100%. In other words, at age 18, he did not give up on life or on his future even knowing he would be incarcerated until almost age 50.

Sealed Exhibit 2, p. 7.

Dr. J. Michael Adler, an experienced psychological examiner with a focus on psychosexual evaluations and sexual risk assessments, examined Mr. Estes and developed a report attached hereto as **Sealed Exhibit 3**. According to Dr. Adler, Mr. Estes' scores on diagnostic testing are associated with a low-moderate risk to re-offend. (Sealed Exhibit 3, p. 12). Dr. Adler also stated that:

> [Mr. Estes] does not demonstrate any deviant sexual interest to children or minors. [. . .] Mr. Estes is absent of any distorted beliefs associated with sexual acting out. He has a high understanding of the harm his offending has caused his victims. He recognizes his responsibility for his sexual offending. Mr. Estes recognizes a need for sex offender treatment. He does demonstrate interpersonal social skill deficits related to his early sexual abuse and trauma involving his biological father.

Sealed Exhibit 3, p. 12. Dr. Adler also states that Mr. Estes is an excellent candidate for treatment as determined by several factors that he evaluated. (Sealed Exhibit 3, p. 10). Dr. Adler provides that:

> Overall, it appears that Mr. Estes' honesty concerning his sexual offenses appears high. This is associated with a positive treatment outcome. [. . .] Mr. Estes' overall ability to acknowledge his sexual offending is a problem and in need for treatment is associated with a positive treatment outcome. [. . .] Mr. Estes also demonstrated significant remorse for his sexual offensive behavior. [. . .] Mr. Estes has been amenable to supervision, following rules, and limits during his incarceration. [. . .] These factors are associated with a positive treatment outcome.

Sealed Exhibit 3, p. 10-11.

In sum, Mr. Estes suffered significant trauma as a child at the hands of both his biological parents and later in his foster family. The history of trauma was known to the State of Tennessee at the time he and his older brother were adopted by Jason and Karen Estes; however, that trauma and the behavioral effects thereof went largely untreated. Despite these hurdles in his developmental years, Mr. Estes has strived to make amends and better himself as a person by becoming involved in a variety of educational, vocational, and religious programs. Mr. Estes is also a good candidate for treatment, and with treatment, is at a low risk to reoffend, ensuring that the public is adequately protected from further crimes of the defendant. Sealed Exhibit 3, p. 12.

**Criminal History**

The Presentence Report prepared in this case calculates Mr. Estes' criminal history as Category II, based on the assignment of three criminal history points for his Knox County convictions. (PSR, Doc. 58, Page ID#199 at Page ID# 212). As a result of the State convictions, Mr. Estes is serving a thirty-year term of imprisonment that resulted from The State offenses are similar to the instant offenses and involving the same victim, which are relevant conduct to the instant offense before this Court. As such, the sentence for the instant offense should run concurrently to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense pursuant to USSG § 5G1.3(b).

Mr. Estes does not possess an extensive criminal history or history of repeated prior restraints. Further, the offenses occurred when Mr. Estes was a minor and within a time frame of about two months. The Court should consider these mitigating factors before imposing sentence.

**Nature and Circumstances of the Offense**

Mr. Estes developed online relationships through the KIK app, with a number of males whom he did not otherwise know. KIK is a text messaging app that permits users to remain essentially anonymous, and to use the application without any identifiers such as an email address.

KIK has become widely used to exchange sexually explicit material and has become a major concern for law enforcement.[3] According to David Finkelhor, the director of the Crimes Against Children Research Center at the University of New Hampshire, children and teenagers who suffer from depression, social isolation, or bullying are at higher risk of manipulation via electronic communication, like the KIK app.[4]

One of the men Mr. Estes communicated with on KIK suggested to him that he engage in sexual contact with the eight-year-old victim and allow the male to view it. This first offense occurred on or about December 24, 2015. Subsequently, this same male threatened Mr. Estes, only seventeen years old at the time, telling him he would publish the first recording if he did not engage in sexual intercourse with the infant. This second recording was made on February 9, 2016, less than two months after the first recording. This is the manner in which an immature, naïve, young man with his own traumatic history came to be victimized, leading to the situation at hand.

Mr. Estes makes no excuses for his crime. He should not have committed it. He should have asked for help, but as an immature seventeen-year-old did not feel he had an outlet to reach out to and he committed these offenses. He has punished himself daily and continuously, living with his guilt and shame, and still trying to make the best of his limited, restricted, imprisoned life. The circumstances of his offense are extremely serious and represent unusual and aberrant behavior by a then seventeen, now twenty-six-year-old, young man with no criminal record or violent history. These events, which occurred over a short period of time, have and will alter Mr. Estes' future for the rest of his life.

---

[3] Stolberg, Sherly Gay, *Wildly Popular App Kik Offers Teenagers, and Predators, Anonymity*, New York Times, https://www.nytimes.com/2016/02/06/us/social-media-apps-anonymous-kik-crime.html
[4] *Id*.

10

## Grounds for Variance

### Consideration of the Seriousness of the Offense, Promoting Respect for the Law, Providing Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

Mr. Estes acknowledges that he committed the serious offenses to which he has pled guilty in this case. In evaluating this factor, however, he respectfully asks the Court to take into account that his involvement in this crime was connected to and had its genesis from his own victimization as noted above.

Mr. Estes is already incarcerated and serving a thirty-year sentence for associated crimes that are now at issue again before this Court and for which he will also receive punishment as such is adequately deterred from future criminal conduct and just punishment for his actions. Mr. Estes will be incarcerated well into his fifties. His likelihood of recidivism is low. Sealed Exhibit 3, p. 12.

In a report from the United States Sentencing Commission examining federal offenders' recidivism by age at release, the Commission found that older offenders were substantially less likely than younger offenders to recidivate following release.[5] Further, the study found that lower criminal history and a higher education level significantly reduced recidivism rates for all age groups.[6] Mr. Estes will be in his late fifties if released after serving a thirty-year sentence and therefore falls in the category of offenders with a reconviction rate of only 12.2% based on his age alone.[7] When taking his lack of criminal history into consideration, in conjunction with his educational achievements, his likelihood of recidivism is even lower.

---

[5] U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf
[6] *Id*.
[7] *Id*.

**USSG § 5H1.1 – Mr. Estes' Youthfulness at the Time of the Offense**

Under USSG § 5H1.1, youthfulness may be considered a relevant factor in determining an appropriate sentence. Given Mr. Estes' young age at the time of the offense, a sentence below the guideline range is appropriate to reflect the reduced culpability associated with youthful offenders and to ensure a sentence that is sufficient but not greater than necessary to fulfill the purposes of sentencing.

While the guidelines generally discourage departures based on age except in extraordinary circumstances, the Supreme Court and the Sixth Circuit have consistently recognized that youth correlates with reduced culpability, diminished impulse control, an increased susceptibility to negative influences such as peer pressure, and an increased capacity for rehabilitation. *See Starks v. Easterling*, 659 F. App'x 277, 279 (6th Cir. 2016); *see also Graham v. Florida*, 560 U.S. 48, 72 (2010); *Miller v. Alabama*, 567 U.S. 460, 472 (2012). Recognizing the significance youth plays in the commission of offenses, the Sentencing Commission studied and recommended that the Guidelines be amended by adoption of a new policy statement to specifically encourage courts to consider youthful offenders for downward departures or alternative sentencing. U.S.S.G. § 5H1.1, Amendment 829 (2024).

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.
>
> The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age.

U.S.S.G. §5H1.1 Age (Policy Statement).

12

Mr. Estes' offense occurred when he was only seventeen years old, an age at which individuals often exhibit immaturity, poor decision-making, and susceptibility to external influences. While Mr. Estes recognizes that his crimes are serious, it is critical to recognize that Mr. Estes' youth played a substantial role in his conduct. Unlike adult offenders who engage in exploitation with full awareness and premeditation, Mr. Estes' actions were influenced by his adverse childhood experiences, immaturity, lack of experience, coercion by someone he once regarded as a friend, and cognitive limitations associated with youth. Given Mr. Estes' age, a sentence further emphasizing rehabilitation rather than prolonged incarceration serves both the individual and societal interests and comports with the sentencing commissions recognition of youth as a significant contributing factor warranting consideration for a downward departure.

Furthermore, Mr. Estes has demonstrated genuine remorse and a commitment to rehabilitation. The evidence of the positive impact that his pursuits for rehabilitation and education have had on him is overwhelming. As stated above, he has received multiple associates degrees through the Tennessee Transfer Pathway in various fields of study; he has participated and excelled in the Kairos Prison Ministry program; two experienced forensic psychologists who evaluated Mr. Estes report that he is highly amenable to treatment, with Dr. Adler reporting that Mr. Estes is at a low-moderate risk to reoffend; and those in his support system have witnessed and attest to the significant positive transformation that he has undergone throughout his imprisonment, an evolution achieved despite circumstances that would cause many to lose hope. An additional lengthy period of incarceration would not only hinder this progress but also counteract efforts to reintegrate Defendant as a productive member of society.

13

**Mr. Estes' Sentence should be run Concurrently**

The counts in this case involve the same conduct or closely related acts, such that a concurrent sentence aligns with the Guidelines' intent to avoid excessive punishment. A concurrent sentence balances punishment with an opportunity for reform, particularly if the defendant has no prior criminal record as is the case with Mr. Estes.

The Guidelines also provide that a federal sentence should be reduced by imprisonment already served on an undischarged term pursuant to U.S.S.G. § 5G1.3(b). Under this provision, Mr. Estes' sentence should be imposed to run concurrently to the remainder of the undischarged term of imprisonment because the State term of imprisonment resulted from the same relevant conduct to the instant offense of conviction – the incidents that occurred with C.P. which are contemplated by Counts One and Three of the State judgment.

Accordingly, the sentence for the instant offense should run concurrently and concurrently to the prior undischarged term of imprisonment.

**Conclusion**

Mr. Estes recognizes that as a teenager he victimized two other children as he had been victimized and as a result, they now have an adverse childhood experience that will require psychological treatment, and he hopes that they receive the treatment that he did not. The failure of the State and his adoptive parents to identify and seek appropriate treatment for Mathew at age six and throughout his childhood should not relegate him to condemnation for the remainder of his life as a result of his own inappropriate and unlawful sexual conduct, committed in the void of his opportunity to develop appropriate social and sexual norms given his background.

Based on the foregoing, Mr. Estes respectfully requests that this Honorable Court grant him a downward departure or variance from the advisory guidelines range and impose a total effective sentence of thirty years to run concurrently the remainder of his State sentence.

Respectfully submitted this the 1st of April, 2025.

*s/ Loretta G. Cravens*
David M. Eldridge, Esq. BPR # 012408
Loretta G. Cravens, Esq. BPR # 023576
Eldridge & Cravens, P.C.
400 W. Church Ave., Ste 101
Knoxville, TN 37902
(865) 544-2010
(865) 544-2015 (fax)
deldridge@ecattorneys.law
lcravens@ecattorneys.law

*Attorneys for Matthew Estes*
